NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

| | |
|---|---|
| THE JACOB & ALICE KLEIN CHARITABLE REMAINDER UNITRUST, ILANA KAHN, TRUSTEE, | :    TAX COURT OF NEW JERSEY |
| | : |
| | :    DOCKET NO.  006284-2020 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DIRECTOR, DIVISION OF TAXATION, | : |
| | : |
| Defendant. | : |

_____:

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Decided: June 4, 2026

Frank Agostino for plaintiffs
(Agostino & Associates, P.C., attorneys).

Timothy M. Kawira for defendant
(Jennifer Davenport, Attorney General of New Jersey, attorney).

SUNDAR, P.J.T.C.

This opinion decides the parties' respective motions for summary judgment.

The only issue is whether plaintiff, a charitable remainder unitrust, is a "charitable

trust" for purposes of N.J.S.A. 54A:2-1 so that its income/gain is exempt from New

Jersey Gross Income Tax (GIT).  In Burke v. Dir., Div. of Tax'n, 11 N.J. Tax 29

(Tax 1990), the Tax Court ruled that only a charitable trust which has exclusively

charitable beneficiaries is entitled to an exemption; thus, a trust which is created to

benefit charitable and noncharitable beneficiaries does not qualify for the exemption.

Relying on <u>Burke</u>, defendant determined that plaintiff's income/gain for tax year 2015 was taxable. Plaintiff's summary judgment motion seeks to reverse this determination, contending that <u>Burke</u> was wrongly decided. Defendant's cross-motion seeks to dismiss the complaint on grounds <u>Burke</u> is still sound law and there are no compelling reasons, factual or otherwise, for departing from its holding.

The court agrees with defendant for the reasons stated below. Therefore, it denies plaintiff's summary judgment motion, grants defendant's cross-motion for summary judgment, and affirms defendant's final determination.

**FACTS**

The following are the undisputed material facts gathered from the documents submitted in support of each party's motion.

*A. The Jacob and Alice Klein Charitable Remainder Unitrust*

Under Internal Revenue Code (Code or I.R.C.) § 664, a charitable remainder unitrust (CRUT) is generally exempt from federal income tax. The primary requirements for a CRUT are that: (a) a "Unitrust Amount" (which is a fixed percentage of between 5% and 50% of the initial net fair market value of the trust assets) must be paid at least once a year to persons, at least one of whom is a noncharitable entity; (b) other than the Unitrust Amount, no other payments can be made to anyone other than an I.R.C. § 170(c) qualified charitable organization; (c) at the end of the payment term of the Unitrust Amount, the remainder must be

2

transferred to an I.R.C. § 170(c) qualified charitable entity. I.R.C. § 664(d)(2). The noncharitable beneficiary must include the distributed Unitrust Amount as income or capital gains on its income tax returns.

A CRUT is considered a split-interest trust. This "is one in which both charitable and non-charitable beneficiaries have interests in the trust corpus and for which the donor-settlor is allowed a tax deduction equal to the value of the charitable interest at the time of the trust's creation." Ann Jackson Family Found. v. Comm'r, 15 F.3d 917, 918, n.1 (9th Cir. 1994). In most cases "the non-charitable beneficiaries . . . take first for a period of time . . . after which the charitable beneficiaries take the remainder of the trust property." Ibid. A split-interest charitable *lead* trust is the reverse, in that "the charitable beneficiaries take first, after which the non-charitable beneficiaries receive the balance of the trust property." Ibid.[1]

Plaintiff, the Jacob and Alice Klein Charitable Remainder Unitrust (the "Klein CRUT") was created in New Jersey in accordance with I.R.C. § 664. The Klein CRUT, by its trustee, Ilana Michelle Kahn, executed an agreement between itself and The Klein Group, LLC, the grantor (hereinafter "LLC Grantor") on December 12, 2014, whereby the LLC Grantor transferred certain property (including stock) to

---

[1] The court noted that "a charitable lead trust is something of a rare bird, since donor-settlors usually want their heirs to enjoy their property before turning it over to a charity." Ann Jackson Family Found., 15 F.3d at 918, n.1.

3

the CRUT.[2]  The term of the trust is twenty years from the date of its commencement of December 12, 2014.

In each taxable year during the 20-year term, the trustee must pay the LLC Grantor, a noncharitable beneficiary, a Unitrust Amount equal to 7% of the net FMV of the trust assets in equal semi-annual installments.  The Unitrust Amount is payable from the trust income, and if insufficient, from the corpus.  Any trust income in excess of the Unitrust Amount reverts to the corpus.  At the end of the 20-year term (when the trust terminates), the trustee is required to distribute the remaining principal and income to the Alice & Jacob Klein Charitable Foundation, with authority to designate substitute remainder beneficiaries which are I.R.C. § 170(c) qualified charitable organizations.

By indenture also dated December 12, 2014, Jacob Klein and Alice Klein, as grantors, created the Alice & Jacob Klein Charitable Foundation.  They were also the initial trustees.[3]  The Internal Revenue Service (IRS) granted the foundation an I.R.C. § 501(c)(3) status, thereby deeming it as a federally tax-exempt entity, effective December 19, 2014.

---

[2]  The LLC Grantor is owned equally by Jacob Klein and Alice Klein.

[3]  In the event the initial trustees died or could not serve in that capacity, the successor co-trustees were three individuals, Ilana Michelle Kahn, Leora Ariella Klein, and Michael Klein.  These persons were also involved in the Klein CRUT in that Ilana Michelle Kahn was its trustee, while Leora Ariella Klein and Michael Klein were the successor co-trustees.

B.  *The Klein CRUT's Tax Returns*

For tax year 2015, the Klein CRUT federally filed a Split-Interest Information return reporting interest and dividend income.  It also reported short-term gains from disposition of property of about $6.01 million and the Unitrust Amount of $388,471 as distributions made for the tax year.

For the same tax year, the Klein CRUT filed a GIT Fiduciary return reporting the same income (interest, dividends, gain) and the amount distributed to the LLC Grantor, as it had for federal income tax purposes.   It reported $0 as the GIT due on the net taxable income, and requested a refund of $450,172, the estimated GIT paid.

Defendant, the Director, Division of Taxation ("Taxation") computed the GIT due on the reported net income, which was about $47,100 higher than the refund claimed.  Therefore, Taxation issued a bill for the balance (plus interest).

The Klein CRUT then filed an amended GIT fiduciary return excluding the previously reported gain income of about $6.02 million.  It explained that the amendment was to "correct" the reported gain income of $6,023,217 because as a CRUT, "the gains are not taxable" under I.R.C. § 664(c).  It requested a refund of the previously paid estimated GIT.

By its letter of January 3, 2018, Taxation denied the request explaining that for GIT purposes, "charitable trusts are defined as trusts operated exclusively for religious, charitable, scientific, literary or educational purposes."  A CRUT, the letter

5

stated, "is not operated exclusively for charitable purposes because it pays income to one or more noncharitable income beneficiaries." Taxation concluded that if the "New Jersey sourced income is not permanently and irrevocably set aside for charitable purposes then" such income is taxable. Taxation then sought payment of $55,284.11 which was currently due.

The Klein CRUT timely protested this conclusion administratively to Taxation's Conference and Appeals Branch (CAB). It argued that Taxation's position set forth in Technical Bulletin TB-64, Charitable Remainder Trusts (June 29, 2009)[4] was "an erroneous attempt to contradict [the] clear symmetry" between taxing distributions to a noncharitable beneficiary and not taxing distributions to a charitable beneficiary. It noted that even Burke supported this principle although there the trust was a charitable lead trust,[5] and that while the GIT Act does not define a charitable trust, the I.R.C. specifically does, therefore, "New Jersey must follow" the federal law. The Klein CRUT further noted that Taxation's Bulletin resulted in double taxation because it taxes both the beneficiary and the trust while the IRS uses an equitable tier system (by taxing only the noncharitable beneficiary on the Unitrust Amount since the remainder of the trust's assets/income is set aside for charity).

---

[4] See pp. 9-10.

[5] See p. 3.

6

The CAB was unpersuaded. Taxation then issued its final determination reiterating that CRUTs "have noncharitable beneficiaries," therefore, they, like the Klein CRUT do "not meet the definition of a charitable trust." As a result, the Klein CRUT was subject to GIT.

The Klein CRUT timely appealed Taxation's final determination to this court, after which the instant motions for summary judgment followed.

## ANALYSIS

### A. Summary Judgment Standards

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Here, the material facts are undisputed. The only issue is whether the Klein CRUT qualifies for exemption from the GIT as a "charitable trust" under N.J.S.A. 54A:2-1. Therefore, resolution via summary judgment is appropriate.

### B. Taxability of Trusts under the GIT Act

N.J.S.A. 54A:5-3 provides that the "income or gains of [a] trust, if any, taxable to such . . . trust shall consist of the income or gains received by it which has not been distributed or credited to its beneficiaries." A beneficiary's income is the

7

trust's income or gains which is either "required to be distributed currently or is in fact paid or credited to" the beneficiary. Ibid. If a trust has paid tax on "income distributed or to be distributed to a beneficiary," then the beneficiary can "exclude such income" for GIT purposes. Ibid.

N.J.S.A. 54A:2-1 imposes GIT "on the New Jersey gross income . . . of every individual, estate or trust (other than a charitable trust or a trust forming part of a pension or profit-sharing plan), subject to the deductions, limitations and modifications hereinafter provided." Thus, while the trust's beneficiary is generally subject to paying GIT (unless it is a charitable entity), the charitable trust itself is not. See Instructions to the New Jersey fiduciary income tax return (income "paid, credited, or required to be distributed to a beneficiary is taxable to such beneficiary" but "if the beneficiary is an exempt charitable organization, no tax will be imposed").

The GIT statute does not define "charitable trust." Nor are there any regulations in this regard.

The only case which interpreted the phrase "charitable trust" vis-à-vis N.J.S.A. 54A:2-1 was Burke. There, the John Seward Johnson 1963 Charitable Trust's agreement required the trustees to first distribute the entire annual trust income to educational, religious or charitable entities qualifying as tax exempt under I.R.C. § 501(c)(3) until a date certain. Thereafter, the remainder (income and principal) were to be distributed for the benefit of certain relatives of the grantor

8

(thus, to noncharitable beneficiaries). In other words, "the exclusive beneficiaries of the trust shall be charitable interests until a stated event but not later [than a certain date] and thereafter, the exclusive beneficiaries are private or noncharitable interests." 11 N.J. Tax at 32.

The court concluded that under common law, a charitable trust was one with "exclusively charitable purposes," which "is presumed to have been known" by the Legislature when it enacted the GIT Act, "and particularly N.J.S.A. 54A:2-1." Burke, 11 N.J. Tax at 39. Therefore, regardless of the word "charitable" in the trust's name, "it must be presumed that the common law requirements for a charitable trust are applicable when considering the" GIT Act. Ibid. This factor, when considered alongside the "scheme of the [GIT] Act and the common sense of the situation," rendered Taxation's longstanding "position" that a charitable trust is one that is "operated exclusively for a religious, charitable, scientific, literary or educational purpose," as being "in accord with the statutory language" and "manifestly reasonable." Id. at 42-43.

Almost twenty years later, in 2009, Taxation issued Technical Bulletin 64. Citing Burke, the Bulletin explained:

> A "charitable trust" for New Jersey Gross Income Tax purposes means a trust operated exclusively for religious, charitable, scientific, literary or educational purposes. A trust cannot be deemed to be a charitable trust unless it is operated exclusively, during all of the taxable years in question, for religious, charitable, scientific, literary, or

9

educational purposes, serves a public interest as opposed to a private interest and, under the governing instrument, there is no possibility that a noncharitable beneficiary will receive gains or income.

In contrast, a Charitable Remainder Trust is formed to pay income to one or more noncharitable income beneficiaries. The donor donates property or money to the Charitable Remainder Trust while continuing to use the property, receive income and/or provide for beneficiaries. After a specified period of time, the Charitable Remainder Trust pays the entire remainder amount to charity or uses the trust for a charitable purpose. The terms of the trust are specified in the governing instrument.
. . .

Only <u>exclusively</u> charitable trusts qualify for income tax exemption under the New Jersey Gross Income Tax Act. A Charitable Remainder Trust, in contrast to a charitable trust, has "noncharitable" beneficiaries and does not operate exclusively for charitable purposes. Accordingly, a Charitable Remainder Trust is not an exclusively "charitable trust" exempt from New Jersey income tax under N.J.S.A. 54A:2-1 and income that is not distributed and which is not deemed to be permanently and irrevocably set aside or credited to a charitable beneficiary is taxable income to the trust.

The Bulletin stated that the three types of charitable remainder trusts under I.R.C. § 664, including a CRUT, are "treated similarly" for GIT purposes, thus, they were all taxable.

The instructions to the New Jersey fiduciary income tax return reiterate the above by explaining that a charitable trust is one that is "operated exclusively for a religious, charitable, scientific, literary, or educational purpose," and its income is

10

exempt from GIT.  See also Estates and Trusts, Tax Topic Bulletin GIT-12 (rev. 01/26) ("Charitable remainder trusts and charitable unitrusts are subject to income Tax filing requirements because they are not operated exclusively for charitable purposes") (cross-referencing Technical Bulletin 64).

*C. Does the Reasoning in Burke Apply to the Klein CRUT?*

The trust in Burke and the Klein CRUT here are similar in the sense that both had/have charitable and noncharitable beneficiaries.  However, the distribution scheme was the reverse: in Burke, all of the annual income of the trust had to be first distributed only to charities.  11 N.J. Tax at 33.  After the end of a certain period, distributions were to be made only to the noncharitable beneficiaries.  Ibid.[6]  Here, the Unitrust Amount is to be first distributed to a noncharitable beneficiary, the LLC Grantor, and after twenty years, to charitable entities.

Both parties agree that the difference in distribution sequence of the trusts in Burke and the Klein CRUT does not change the legal analysis at issue.  Both agree that there have been no enactments or amendments to N.J.S.A. 54A:2-1 or to any other provision in the GIT Act overruling Burke, nor any regulations in this regard. Both, however, seek a divergent application of the law.  Taxation argues that Burke is the controlling law.  The Klein CRUT argues that Burke, a non-binding trial court

---

[6]  Additionally, as here, in Burke, the trust filed GIT returns. 11 N.J. Tax at 33.  As here, Taxation also determined that the gain income from sale of stock was taxable to the trust.  Ibid.

11

decision, was incorrectly decided, and the plain language of the statute which does not condition a charitable trust be exclusively charitable, controls, therefore, this court should overrule Burke.[7]

It is well-established that a statute's language when plain and unambiguous must be applied without question. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (a court should not "rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language") (citation and internal quotation marks omitted). Thus, a court should not "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment . . . or engage in conjecture or surmise which will circumvent the plain meaning of the act." Ibid. (citations and internal quotation marks omitted). See also GE Solid State v. Dir., Div. of Tax'n, 132 N.J. 298 (1993) (Taxation cannot, via regulation, condition a sales tax exemption by requiring the product to be manufactured for sale when there is no such indication in the statute's literal language or legislative history).

However, the literal interpretation of a word or phrase in isolation is not an ideal or even preferred approach to statutory construction. Koch v. Dir., Div. of Tax'n, 157 N.J. 1, 7 (1999) ("a statute is to be interpreted in an integrated way

---

[7] Since this is a trial court, it cannot overrule any court's decision. However, it can choose to disagree with, thus, not follow, another trial court's decision.

without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning"). While courts "continually struggle with the literal meanings of the words in a statute, and what the Legislature intended those words to mean," they are guided by certain wise maxims: (a) to read a statute literally is to misread the statute; (b) a statute should be construed according to its "spirit and policy" not "the literal sense of particular items;" and (c) a statute should be read "perceptively and sensibly with a view toward fulfilling the legislative intent." Rockland Elec. Co. v. Dir., Div. of Tax'n, 30 N.J. Tax 448, 459 (Tax 2018) (citations and internal quotation marks omitted).

In this connection, another well-established principle is that tax exemptions are construed strictly. Thus, "doubts as to the eligibility for exemption are resolved against the claimant." In re Estate of Kuebler, 106 N.J. Super. 13, 17 (App. Div. 1969). While "strict construction does not mean a construction which begrudges," nonetheless "an exemption must be denied if a purpose to grant it is doubtful." Ibid. (citation and internal quotation marks omitted).

Here, the plain language of N.J.S.A. 54A:2-1 excepts a "charitable trust" from being subject to GIT. Did the Legislature intend to extend the exemption to any variety of trusts which were partially for the benefit of charities and partially for the benefit of non-charitable entities or persons? Per the Klein CRUT there is no need

13

to engage in this inquiry since N.J.S.A. 54A:2-1 does not add any qualification to the phrase "charitable trust" such as "exclusive" or "exclusively." It notes that one need only compare the inheritance tax statute which includes this word when exempting from tax any property of a decedent's estate

> which passes to, for the use of or in trust for . . . any institution or organization organized and operated exclusively for religious, charitable, benevolent, scientific, literary or educational purposes . . . .

> [N.J.S.A. 54:34-4(d).]

Taxation argues that the Legislature could not have intended to exempt trusts created to benefit non-charitable beneficiaries even if the remainder of the trust corpus is distributable to a charitable entity. This is because, Taxation notes, such a liberal construction of N.J.S.A. 54A:2-1 is not in keeping with the well-established principle that tax exemptions are strictly construed against the claimant. In response to the Klein CRUT's contention that the Legislature could have used the word "exclusive," in N.J.S.A. 54A:2-1, Taxation notes that the Legislature could have, but did not, explicate the types of split-interest trusts in the statute, or cross-reference I.R.C. § 664.

The issue herein is not what is the plain meaning of the word "charitable" or "trust" or the phrase "charitable trust." Rather, it is, in substance, whether the Legislature intended for a split-interest trust, which does not hold the corpus and income therefrom only for the benefit of charities, to be encompassed by N.J.S.A.

14

54A:2-1. Therefore, this court will not analyze the statute in isolation, i.e., conclude that as long as the words "charitable" and "trust" are included in a trust agreement, an exemption must be granted regardless of the context and the general statutory scheme of the GIT Act.

Both parties have a plausible explanation of what the Legislature could have intended to encompass in the phrase "charitable trust." Therefore, the court will examine extrinsic evidence. See DiProspero, 183 N.J. at 492-93 (where a statute can have "more than one plausible interpretation," a court can resort to "extrinsic evidence" such as its legislative history "and contemporaneous construction").

When originally proposed, N.J.S.A. 54A:2-1 taxed all "taxable" trusts. See A. 1513 (Feb. 19, 1976) (N.J.S.A. 54A:2-1 imposes tax "of 2½% on the New Jersey gross income as herein defined of every individual, taxable estate or trust, subject to" certain deductions and the like). There was no mention of a charitable trust. The bill proposed to impose "a flat rate tax of 2.5% on gross income," with three limited deductions, since the proposed GIT Act "avoids loopholes presented in other variations of the income tax, is continuously progressive, based on the provisions for a limited group of deductions, and is simple to administer." Sponsor's Statement to A. 1513 (Feb. 19, 1976).

The bill was replaced by <u>Assembly Comm. Substitute for A. 1513</u> (March 10, 1976). This also did not mention charitable trusts, but it deleted the tax rate of 2½% in N.J.S.A. 54A:2-1.

Senate Committee amendments of May 13, 1976, amended N.J.S.A. 54A:2-1 by deleting the word "taxable" and adding an exception for a charitable trust or a retirement plan trust. Thus, the proposed statute now read that GIT was imposed "on the New Jersey gross income as herein defined of every individual, estate or trust (other than a charitable trust or a trust forming part of a pension or profit-sharing plan)."[8] However, there were no explanatory statements in this regard. Nor are there any reasons for excluding a "charitable trust" from N.J.S.A. 54A:2-1 in the <u>Senate Revenue, Fin. and Approp. Comm. Statement to Assembly Comm. Substitute for A. 1513</u> (May 13, 1976).

Thus, the legislative history does not answer whether N.J.S.A. 54A:2-1 extends, or was intended to extend, to partially charitable trusts (where a portion of the trust income/corpus was to be distributed to non-charitable beneficiaries) or was limited to full charitable trusts (where all income/assets of the trust was to be distributed only to charitable entities).

---

[8] The Senate Committee amendments also proposed enactment of N.J.S.A. 54A:5-3 (taxability of trusts and estates) using the same language as is its current form. By Senate Committee amendments adopted June 14, 1976, N.J.S.A. 54A:2-1 was amended to include the tax rate at 1½%.

The only construction of the statute was almost 14 years after its enactment in Burke. While not "contemporaneous"[9] or binding, a fully reasoned and articulated published trial court opinion is strongly persuasive. See e.g. Pomanowski v. Monmouth County Bd. of Realtors, 89 N.J. 306, 314 n.3 (1982) (court was unpersuaded by "trial court opinions" from "several federal district court decisions" because they decided the cause of action at issue "in a cursory manner," thus, "lack[ed] persuasive force and amount[ed] to no more than a respected source of instruction"). The decision in Burke, in contrast, was fully rationalized. Every argument made therein was thoroughly considered and rejected for carefully articulated reasons. That the Klein CRUT disagrees with the rationale does not take away Burke's persuasive power. This is especially true because the Klein CRUT is making almost identical arguments to those in Burke, i.e., the word "charitable" in the trust's moniker means it is a charitable trust and therefore exempt from GIT; the Restatement of Trusts does not require exclusivity of charitable beneficiaries when determining whether a trust is a charitable trust; the New Jersey Legislature was well-aware of federal income tax concepts concerning exemption for split-interest trusts when it enacted the GIT Act, and thus could easily have understood that a

---

[9] The Klein CRUT correctly notes that since TB-64 was issued nineteen years after Burke was decided, and simply adopted the holding therein, it is not a contemporaneous understanding of the legislative intent underlying N.J.S.A. 54A:2-1, therefore, merits no deference usually accorded to Taxation's reasonable interpretation of the law.

charitable trust includes split-interest trusts instead of only being concerned with the common law requirements in this regard.

While the above arguments by the Klein CRUT can be dismissed for the same reasons and conclusions in <u>Burke</u>, the court will address two particularly pertinent arguments advanced by the Klein CRUT as to why the reasoning in <u>Burke</u> was allegedly incorrect. One argument is that <u>Burke</u> relied only on common law for the definition of charitable trusts, when it should have examined the more modern, existing Code to understand that a "charitable trust" can and should include split-interest trusts. The court agrees that the Legislature was likely aware of the federal income tax concepts, such as split-interest trusts, when enacting the GIT Act. Equally true, however, is that the Legislature did not pattern the GIT Act based on the Code. <u>See</u> <u>Senate Revenue, Fin. and Approp. Comm. Statement to Assembly Comm. Substitute for A. 1513</u> 2-3 (A. 1513 "was intended as a tax on gross income, shorn of the deductions and items of preference in the Federal Income Tax"); Richard Van Wagner, <u>The New Jersey Gross Income Tax: An Analysis from Background to Enactment</u>, 2 <u>Seton Hall Legis. J.</u> 111, n.33 (Summer 1977) (a "major objection[]" to the GIT Act's proposal "throughout the state and at committee meetings . . . was the inequity of the federal income tax" voiced by "individuals who contended that the rich benefitted from loopholes" such as "special treatment of capital gains, depreciation on commercial real estate and tax exempt securities"

18

which shifted the tax burden to the low-to-middle income taxpayers). See also Reck v. Dir., Div. of Tax'n, 345 N.J. Super. 443, 447 (App. Div. 2001) ("The state and federal tax statutes are not parallel").

Thus, when the Legislature deemed it fit, it relied upon federal income tax statutes *when enacting* the GIT Act. See e.g. N.J.S.A. 54A:1-2 (dependent is one who is so under the Code); N.J.S.A. 54A:2-3 (if an association, trust or other unincorporated organization is taxable as a corporation for federal income tax purposes, then it is not subject to the GIT Act); N.J.S.A. 54A:5-1(b); (c) (net profits from business and net gains from disposition of property to be determined in accordance with method of accounting allowed for federal income tax purposes); N.J.S.A. 54A:5-1(c) (in determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes, and net gains/income shall not include gains/income from transactions where non-recognition is allowed for federal income tax purposes); N.J.S.A. 54A:8-3 (taxpayer's taxable year and accounting method is the same as for federal income tax purposes).

This selective engrafting also continued *after* the GIT Act was enacted in 1976, and both before and after Burke was decided in 1990. See e.g. N.J.S.A. 54A:6-10(d) (distributions from an employees' trust "described under" I.R.C. § 401(a), and exempt under I.R.C. § 501(a), and rolled over under I.R.C. §§ 402 or 403 are excluded from GIT); N.J.S.A. 54A:6-21 (employer contributions to a trust which is

19

part of an I.R.C. § 401(k) plan is excluded from GIT); N.J.S.A. 54A:6-27 (contributions into, and payments from a medical savings plan excludable under I.R.C. § 220 is also excludable under the GIT Act); N.J.S.A. 54A:6-28 (qualified distributions from, or amounts rolled-over to a Roth IRA, as defined under I.R.C. §§ 72 and 7701 are excluded from GIT).

However, there was no reference to, or incorporation of, I.R.C. § 664 to indicate that partial charitable trusts (i.e., split-interest trusts) should also be exempted under the GIT Act. If the Legislature felt that Burke was incorrectly decided because it did not effectuate the underlying philosophy of I.R.C. § 664 when interpreting N.J.S.A. 54A:2-1, it could have easily amended N.J.S.A. 54A:2-1 to say that split-interest or other types of trusts exempt under the Code are also exempted under the GIT Act. The Legislature is not only empowered to do so, but it also does so when it deems it appropriate to overrule, modify, or apply a court decision. See e.g. Campo Jersey, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 251, 266 (Tax 2005) (pointing out that legislation was enacted "as a result" of a particular case which dealt with imposition of sales tax on prepared foods bought from a vending machine); Colacitti v. Murphy, 474 N.J. Super. 309, 324-26 (Law Div. 2022) (explaining legislation introduced and enacted to address the concerns raised by a Tax Court decision denying local property tax exemption to the property of a certain hospital); In re Estate of Kuebler, 106 N.J. Super. 13, 18-19 (explaining that the

Legislature amended the inheritance tax statute, N.J.S.A. 54:34-4(d) in 1962 to exempt bequests made to churches, hospitals and other charities, from the tax and "thereby make the New Jersey law uniform with that of the other States and with the exemptions accorded by Federal law"). Here, the Legislature did not react negatively to Burke and has not done so for over twenty years since that case was decided.

The Klein CRUT correctly points out that legislative inaction is not necessarily an indication that a court's decision is correct. Indeed, legislative inaction is deemed a "weak reed" to fall back upon where the actions of Taxation are found unreasonable or unsound. See GE Solid State, 132 N.J. at 312-13 (noting that a "long-continued error does not make valid what is clearly invalid"). The court's point is not just legislative inaction. It is that the reasoning in Burke should apply here because it comported with the intent underlying N.J.S.A. 54A:2-1 as evidenced and endorsed by common law, common sense, and the overall scheme of the GIT Act. This is the "doctrine of probable legislative intent" which is "a more reliable guide than the so-called doctrine of legislative inaction." Amerada Hess Corp. v. Dir., Div. of Tax'n, 107 N.J. 307, 322 (1987).

The amendments to the GIT Act pre- and post-Burke to incorporate or cross-reference specific provisions of the Internal Revenue Code, but not I.R.C. § 664 in response to Burke, only shows that the case's narrow interpretation of "charitable

21

trust" in N.J.S.A. 54A:2-1 is sound and does not require re-visitation. Based on common sense and the public's ordinary and reasonable understanding of the word "charitable" as being something *only* for the benefit of the public good, not for the partial exclusive benefit of private noncharitable individuals, the Legislature would not see a need to amend N.J.S.A. 54A:2-1 based on the decision in Burke. See e.g. Amerada Hess Corp., 107 N.J. at 322 (finding that although a certain type of tax was not specifically referenced or spelled out in a statutory disallowance, there was "no common-sense reason why our Legislature would not have intended" that inclusion, and "adopt[ing]" the Tax Court's conclusion that "from the ordinary meaning of the[] words [at issue] and from the public perception of the purpose of the [specific tax type] . . . the legislators would have been reassured that no amendment of the statutory language was needed to protect the State's revenue source") (citation and internal quotation marks omitted).

The second argument advanced by the Klein CRUT as to why Burke is wrong is that the underlying philosophy of I.R.C. § 664 achieves a tax accounting and societally appropriate symmetry: (a) the noncharitable beneficiary is annually taxed on the unitrust amount received, thus, is not given any special treatment; and (b) the trust's corpus (even if used to pay some or all of the Unitrust Amount) is preserved for the ultimate charitable beneficiaries since it is not reduced by taxes imposed on the trust, thus, is treated like any other charitable trust, and encourages the laudable

aim to fund charities that do charitable acts for the deserving general public. It argues that the New Jersey Legislature, which was well aware of split-interest trusts when it enacted the GIT Act, would have desired the same symmetry in N.J.S.A. 54A:2-1, therefore, this court should strive to accomplish the result because Burke did not.

However, the Burke analysis (which this court supports and is the foundation of this court's decision in the instant case) also achieves symmetry. The gifts (distributions, donations or payments) made to the charitable beneficiaries are neither taxable nor reduced/depleted due to payments for noncharitable purposes. The charitable trust with *only* charitable beneficiaries is also not taxed on the income/corpus, since those funds are fully held for distribution to the charitable beneficiaries for use towards those charities' worthy cause(s), without any depletion or reduction by payments to noncharitable beneficiaries. Both the trust and the charity receive tax relief, thus promoting a societal goal of the quid pro quo afforded to entities dedicated to charitable causes.

This quid pro quo concept is not new. It is in fact entrenched in the local property tax area as to properties owned by non-profit entities organized exclusively for non-profit purposes, and which are actually and/or exclusively used for certain charitable or other public good purposes. Such properties are tax exempt precisely because the property owner is relieving the government of the cost of doing those

23

same charitable acts. See N.J.S.A. 54:4-3.6; Advance Housing, Inc. v. Teaneck Twp., 215 N.J. 549, 568, 572-73 (2013). Nowhere in New Jersey tax law is a charitable exemption extended to an entity created for the exclusive benefit of noncharitable beneficiaries, even if a portion of donations is for the exclusive benefit of charitable entities.

Here, for the twenty years of the Klein CRUT's existence, Unitrust Amounts are paid exclusively to the LLC Grantor, a noncharitable entity. Payment to this entity is not for a societal service which the government would otherwise have to provide at its cost. Accordingly, a quid pro quo GIT exemption for the Klein CRUT is unwarranted. This means that under N.J.S.A. 54A:5-3, the LLC Grantor is taxed on the Unitrust Amount it receives from the Klein CRUT, and the Klein CRUT is taxed on the income/gain it earns.[10]

The court acknowledges that other New Jersey tax statutes spell out exclusivity when granting exemptions. For instance, and as noted by the Klein CRUT, the inheritance tax statute, N.J.S.A. 54:34-4(d), exempts bequests made to entities which are "organized and operated exclusively for" among others, "charitable purposes." The local property tax statute, N.J.S.A. 54:4-3.6, exempts "all buildings actually used in the work of associations and corporations organized

---

[10]  As noted above, if a trust paid tax on "income distributed or to be distributed to a beneficiary," the beneficiary can "exclude such income" for GIT purposes. N.J.S.A. 54A:5-3.

exclusively for religious purposes, including religious worship, or charitable purposes." The sales tax statute, N.J.S.A. 54:32B-9, exempts sales of tangible personal property to "a corporation, association, trust . . . organized and operated exclusively, for among others, "charitable . . . purposes." See also N.J.A.C. 18:24-9.6 (an entity is not deemed to be "organized or operated exclusively" for a charitable purpose "unless it serves a public rather than a private interest," which means that it does not operate to or for the "benefit of private interests such as designated individuals, the creator or his or her family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests"). And unrelated to tax exemptions, but with the same benign eye towards exclusively charitable organizations, is the statutorily granted immunity from liability claims to a "nonprofit corporation, society or association organized exclusively for," among others, "charitable . . . purposes" in furtherance of "the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes." N.J.S.A. 2A:53A-7(a); 53A-10.

While these statutes endorse the underpinnings in Burke's conclusion that the exemption in N.J.S.A. 54A:2-1 is intended to benefit only those charitable trusts which are created to benefit only charitable beneficiaries, the fact that they use the word "exclusively" does not erase Burke's vitality. For one, the organizational

25

aspect of these statutes is not simply a mechanical review of an entity's incorporation documents. See e.g. Fountain House of New Jersey, Inc. v. Montague Twp., 13 N.J. Tax 387, 399-400 (Tax 1993) (an entity seeking local property tax exemption must show "its requisite character and exempt purpose not only by its formal organizational documents but also by the activities it performs after its existence has commenced" and to simply "examine . . . the formalities" of its creation "without examining the actual conduct (activities) of the corporation thereafter, would result in the elevation of form over substance").

Second, by maintaining that these statutes indicate that the absence of the word "exclusive" in N.J.S.A. 54A:2-1 means that the Legislature intended to include all types of split-interest trusts, the Klein CRUT disregards an important principle of statutory construction stated above, which is not to focus on a word or phrase without considering the statutory scheme as a whole. The scheme of the GIT Act is not to grant tax exemptions or deductions because the Code does so, or because the Code's philosophy underlying the exemption is applicable to the GIT Act. Rather, the GIT Act itself is ample evidence that if the Legislature wants to, it can incorporate, by reference, any provision of the Code. Added to this is the other principle that tax exemptions should be narrowly construed, which means that if the Legislature wanted to be liberal with an exemption, it would have included split-interest trusts in N.J.S.A. 54A:2-1. To construe this statute otherwise is not only antithetical to the

26

narrow construction of exemptions but is also contrary to the gift-giving encouraged by the legislature for charitable organizations. It also ties into what charitable commonsensically means and should mean: a gift that is purely and entirely for the benefit of charitable entities without any reservation or diversion of such gifts for any other purpose.

In light of these principles, and the quest here for the legislative intent of exempting a charitable trust from GIT under the "probable intent" doctrine, the court is unpersuaded by the Klein CRUT's contentions that (a) <u>Burke</u> was wrongly decided, and (b) the philosophy of I.R.C. § 664(c) should guide the interpretation of N.J.S.A. 54A:2-1.

**CONCLUSION**

For the reasons aforesaid, the court concludes that <u>Burke</u> continues to be legally and commonsensically sound, and its reasoning applies with full force to the present case.[11] The court therefore denies the Klein CRUT's motion for summary judgment, grants Taxation's cross-motion for summary judgment, and affirms Taxation's final determination.

---

[11] For this reason, the court does not need to address the non-tax cases cited by the Klein CRUT which discuss when a trust is charitable.